# United States Court of Appeals

## For the First Circuit

No. 09-1214

WEN Y. CHIANG,

Plaintiff, Appellant,

v.

VERIZON NEW ENGLAND INC.,

Defendant, Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Dean Carnahan with whom Law Offices of Dean Carnahan were on brief for appellant.
Joshua A. Lewin with whom William A. Worth and Prince, Lobel, Glovsky & Tye LLP were on brief for appellee.

February 9, 2010

**LYNCH**, **Chief Judge**.  In July 2006, plaintiff Wen Y. Chiang sued his telecommunications company, Verizon New England Inc. (Verizon NE), in state court, alleging in part that the company had billed his account for telephone service he had not ordered.  Chiang filed a second state court suit against Verizon NE in February 2007 over a billing dispute triggered by Chiang's conceded failure to pay telephone bills on two accounts, totaling approximately $200.  Chiang's substantive billing disputes with Verizon NE were resolved in these state court lawsuits and are not at issue here.

In November 2006, Chiang brought this suit against Verizon NE in Massachusetts federal court, seeking more than $1 million for claimed violations of his rights under § 1681s-2(b) of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., and under the Fair Debt Collection Practices Act (FDCPA), id. § 1692 et seq., as to Verizon NE's handling of the disputes resolved in state court.  The district court granted summary judgment for Verizon NE on all of Chiang's claims in January 2009.  Chiang v. Verizon New England, Inc., No. 06-cv-12144-DPW, 2009 WL 102707 (D. Mass. Jan. 13, 2009).  Chiang appeals from the grant of summary judgment.

In particular, Chiang asserts that Verizon NE, as a furnisher of information, failed to adequately investigate disputes about the furnished information reported to it by consumer reporting agencies (CRAs), as required under the FCRA.  15 U.S.C.

§ 1681s-2(b). He also alleges that Verizon NE was a debt collector and its practices were abusive, in violation of the FDCPA. Id. § 1692a. Creditors are generally not liable under the FDCPA when collecting on their own accounts, but Chiang asserts that Verizon NE falls within a limited exception for creditors who collect their own debts under a name that suggests a third party is collecting the account. Id. § 1692a(6).

His claims raise several issues of first impression for our court. They include whether § 1681s-2(b) of the FCRA provides for a private right of action and the standards for asserting a claim under that section. We join other circuits in recognizing that under § 1681s-2(b) there is a private cause of action, that the investigation must be reasonable, that this test is objective, and that plaintiff bears the burden of proof. We further hold that a § 1681s-2(b) claim requires plaintiff to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover. However, we reject the defendant's argument that the restriction in an earlier section of the statute, id. § 1681s-2(a)(1)(D), which precludes reliance on a plaintiff's allegations for the purposes of that subsection, applies to a plaintiff's own assertions in support of his claim under § 1681s-2(b).

We affirm summary judgment for Verizon NE on the FCRA § 1681s-2(b) claims, because Chiang fails to raise a genuine issue

-3-

of material fact on two issues on which he bears the burden: (1) that Verizon NE's investigation as a furnisher to CRAs was unreasonable and (2) that there were actual inaccuracies that Verizon NE could have detected in a reasonable investigation. We also affirm entry of summary judgment on Chiang's FDCPA claim because there is no material dispute of fact that Verizon NE is not a debt collector.

I.

When reviewing a grant of summary judgment, we draw all reasonable inferences in favor of the nonmoving party "while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (internal quotation marks omitted). Chiang's argument is that the court drew the wrong legal conclusions from the undisputed facts. Accordingly, "[w]e take the facts largely as described by the district court and from the record of the district court proceedings." Boston & Me. Corp. v. Mass. Bay Transp. Auth., 587 F.3d 89, 92 (1st Cir. 2009).

A.  Background: Chiang's Disputes with Verizon NE over His Telephone Service and the State Court Litigation

The merits of Chiang's disagreements with Verizon NE are not at issue in this case and have already been resolved in state court litigation. However, we outline these disputes to clarify the events that triggered the debt collection and credit reporting practices at issue in this federal case.

-4-

Chiang is the president of a residential construction and painting company in Massachusetts, which, Chiang says, also engages in international trade. At various points between 2005 and 2007, Chiang obtained telephone service on two lines from Verizon NE, a telecommunications company that conducts business in Massachusetts. During this period, Chiang had several disputes with Verizon NE over his service on both accounts. How Verizon NE handled these disputes is the subject of Chiang's federal litigation.

The first disagreement involved Chiang's assertion that Verizon NE charged him from July to November 2005 for long distance service on one line that he says he had not ordered. Chiang alleged in his affidavit, but provided no documentation, that he discussed these charges with a Verizon NE representative in November 2005 but that the company did not follow through on its promise to correct his bill.

A second conflict arose in early 2006, after Chiang temporarily switched his telephone service on both lines to another provider but continued to receive bills from Verizon NE. On May 16, 2006, Chiang sent two demand letters to Verizon NE, noting that he had switched to a different carrier, effective on February 8 of that year, and asking the company to adjust his bill accordingly.

Chiang switched his telephone service back to Verizon NE in the summer of 2006. Although his installation was scheduled for July 5, 2006, Chiang claims that Verizon NE did not install his

service until July 13.  On July 18, 2006, Chiang filed suit against Verizon NE in Massachusetts state court, alleging damages stemming from the delayed installation, as well as from the charges he continued to accrue after switching his service away from Verizon NE.

Chiang asserts that Verizon NE overcharged him for telephone service between July and December 2006, billing him for calls he did not make and for services he did not order while failing to credit him for payments he had made on his account.  In August 2006, Chiang stopped paying his telephone bills on both telephone lines.  He believed that he owed Verizon NE nothing and that the company instead owed him compensation for the amount that he had been overcharged.[1]

Chiang's affidavit says he discussed his concerns with a Verizon NE representative in late August 2006.  In September 2006, Chiang wrote a letter to Verizon NE's attorney, in which he complained about his experience with Verizon NE customer service and alleged that the representative had told him his service would be discontinued if he did not pay his bill.  He also threatened further legal action if Verizon NE continued to "abuse" him.

In December 2006, after providing notice of discontinuance, Verizon NE suspended Chiang's service for

_____

[1]    Chiang made at least one partial payment to Verizon NE, which he explained was meant to cover the fraction of his bill that he did not dispute.

-6-

delinquent payment.  The company later restored limited service to him.  In January 2007, Chiang switched both disputed telephone lines to another provider.  The following month, he filed a second state court suit against Verizon NE for alleged damages arising out of the suspension and partial restoration of his account.

The state court suits were consolidated and resolved primarily for Verizon NE on its motion for summary judgment.[2]

B.      Verizon NE's Debt Collection and Credit Reporting Practices

Chiang's federal claims are about the debt collection and credit reporting practices of Verizon NE during and after the period of his contested service.  We describe the evidence on those practices.

1.      FDCPA Claim

We first review facts related to Chiang's claim that Verizon NE is liable under the FDCPA.  Chiang alleges that Verizon NE was a debt collector, its debt collection practices were abusive, and it attempted to collect its own debts under a name

---

[2]      The state court granted summary judgment in Verizon NE's favor on Chiang's claims for emotional distress and violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. It also found that Chiang's failure to show willful misconduct or gross negligence meant Massachusetts telecommunications tariffs controlled and limited damages on his remaining claims.  Since Verizon NE had expressed its willingness to compensate Chiang for days when he was without service under these tariffs, the court entered summary judgment in Chiang's favor "on th[e] limited issue" of his "entitlement to the proportion of service charges he paid during the days he was without service."

that suggested the debts were being collected by a third party.  In August 2006, Chiang began to receive letters and telephone calls from debt collection agencies seeking to collect on his delinquent accounts with Verizon NE, which totaled just over $200.[3]  Chiang says that at least one of the collection agencies used profane, abusive language and called repeatedly, despite his request that he not be contacted by telephone.

The collection letters identified Chiang's creditor by a variety of names, including "Verizon-North," "Verizon North NE (MASS R)," and "Verizon New England Inc."  Chiang also claims to have received notice from a collection agency and his "credit alert company" that "Verizon Massachusetts, Inc.," based in Columbus, Ohio, was seeking payment on his delinquent account.  At the time, he believed that "Verizon Massachusetts, Inc." was an independent corporation that collected debts for Verizon NE.

2.    FCRA Claim

Turning to facts pertinent to Chiang's FCRA claim, in addition to letters from debt collection agencies, Chiang received communications from CRAs, including Equifax and TransUnion, reflecting his delinquent Verizon NE accounts.  Chiang responded to these credit reports with demand letters to the CRAs, in which he

---

[3]    Although the precise amount owed varied in the collection letters, the majority of the letters requested payment on Chiang's two accounts, which were delinquent in the amounts of $119.20 and $100, respectively.

requested that the CRAs remove this information from his account or list it as disputed. Eight of Chiang's demand letters to the CRAs were in evidence before the district court.[4] While those letters provide background, the FCRA claim against Verizon NE is not and cannot be based on what Chiang told the CRAs. The claim is instead based on the communications from the CRAs to Verizon NE and Verizon NE's response.

The evidence about the CRAs' communication with Verizon NE about Chiang's assertions and Verizon NE's response did not come from Chiang, but from Verizon NE. Verizon NE's undisputed evidence is that its corporate affiliate, Verizon Services Corp. (Verizon), contracts with the Columbus, Ohio-based company Credit Bureau Collection Services, Inc. (CBCS) for all consumer-reporting related activities. Verizon NE has conceded that, under agency law, Verizon NE is liable if CBCS violates the FCRA while acting within the scope of its contractual duties. So we review both the actions of CBCS and of Verizon NE.

CBCS, Verizon NE's agent, is responsible for initially transmitting consumer credit information to the CRAs. Verizon sends CBCS information about delinquent accounts every month. CBCS

---

[4] Of these eight demand letters, three were addressed to Equifax, dated November 24, 2006, April 25, 2007, and May 15, 2007; three were addressed to TransUnion, dated November 30, 2006, December 4, 2006, and December 16, 2006; and two were addressed to Experian, dated November 30, 2006, and December 4, 2006. Only one of these letters had been mailed when Chiang initiated his federal lawsuit on November 29, 2006.

separates out accounts whose balances exceed $50 and have not been paid after sixty days and converts data for these accounts into the digital format used by CRAs.  It then transmits this information to the CRAs.

The CRAs also notify CBCS, through an online reporting system, when a consumer disputes his credit information.  These reports of disputes trigger the protections of 15 U.S.C. § 1681s-2(b), the statute at issue here.  CBCS then investigates consumer disputes by going electronically into Verizon NE's account and billing records (to which Verizon has given CBCS access), in order to determine the accuracy of information provided to CRAs.  CBCS contacts Verizon employees when CBCS is unable to verify the accuracy or completeness of a particular consumer's credit information based on the available records alone.  Verizon designates at least one employee to monitor CBCS's credit reporting activities.

The evidence, provided by Verizon NE, is that CBCS received twelve inquiries from CRAs, over about six months between late 2006 and 2007, about the accuracy of Chiang's reported credit information through its online reporting system.  The record contains twelve summary reports, recovered from the CBCS system, that relate to CRA inquiries about Chiang's account.[5]  These one-

_____

[5] Each of the twelve summary reports contains information about a particular dispute reported to CBCS by a CRA.  Information presented in each report includes: the name and address of the CRA

page reports indicate that Chiang's disputes were described by the CRAs variously as "[c]laims inaccurate information," "[c]laims paid the original creditor before collection status or paid before charge-off," "consumer disputes the balance of this account and states account is in [state and federal lawsuits]," "claims that this account was never paid late," and "[a]ccount involved in litigation." Chiang does not dispute these are the CRA inquiries at issue, although none of them had been made when he first filed his federal lawsuit. Verizon has no record of its personnel having been contacted by CBCS with any additional inquiries regarding Chiang's disputes. After completing its investigation of Chiang's reported complaints, CBCS notified the CRAs in each instance that the information reported on Chiang's account was accurate.

C.      District Court Proceedings

On November 29, 2006, Chiang filed suit in the federal district court of Massachusetts, alleging, inter alia, violations

---

that reported the dispute at issue; the dates on which the notification was received and CBCS's response was sent; the disputed account's balance and payment information; a brief description of "FCRA Relevant Information," that is, the basis for Chiang's complaint; and the response sent to the CRA. All twelve reports indicate that CBCS responded to the various CRAs, "Account information accurate as of date reported." The earliest report is dated December 6, 2006--more than a week after Chiang filed his federal lawsuit--and the last is dated May 25, 2007. Five reports are from December 2006, three from March 2007, and the remaining four from May 2007.

of the FCRA and FDCPA and seeking damages.[6]  We describe specific claims below.  On January 13, 2009, the district court granted Verizon NE's motion for summary judgment.  Chiang, 2009 WL 102707, at *12.

In the course of its reasoning on the FCRA claim, the court held that Chiang had the burden to "identify affirmatively information that a furnisher of credit information could have uncovered through a reasonable investigation."  Id. at *9-10.  The court noted that this circuit has recently announced a similar rule in the context of CRAs' duty under the FCRA to reinvestigate information disputed by consumers.  Id. at *10 (citing DeAndrade v. Trans Union LLC, 523 F.3d 61, 67 (1st Cir. 2008)).  The district court also ruled that, "absent any corroborating evidence," a plaintiff's allegations of inaccuracies were insufficient to demonstrate information that might have been uncovered.  Id. at *10.  For this reason, it said, it declined to consider Chiang's deposition testimony, affidavits, or demand letters when deciding whether he had demonstrated actual inaccuracies that Verizon NE could have discovered.  Id. at *11.

---

[6]  Chiang claims that the negative credit information related to his Verizon NE accounts prevented him from securing a $500,000 loan.  Although Chiang has never earned more than $59,000 in a year, he alleges that his failure to secure this loan prevented him from participating in an international business deal with a total contract value of more than $200 million.  Chiang has variously estimated his lost profits from this missed opportunity at $500,000, $8 million, $27.5 million, and $80 million.

This appeal followed.

                              II.

     Chiang's claims under the FCRA and the FDCPA present
several pure questions of law, including issues of statutory
interpretation.  The district court resolved the case on summary
judgment.  Both because these are issues of law and because the
case is before us on summary judgment, our review is de novo.  See
Bristol W. Ins. Co. v. Wawanesa Mut. Ins. Co., 570 F.3d 461, 463
(1st Cir. 2009).  We may affirm the district court on any basis
apparent in the record.  Sutliffe, 584 F.3d at 325.

     Although it is true that "the standards for summary
judgment are highly favorable to the nonmoving party, the nonmovant
. . . still has a burden to produce evidence sufficient for a
reasonable juror to find in his favor."  Hinchey v. NYNEX Corp, 144
F.3d 134, 146 (1st Cir. 1998); see also 10A Charles A. Wright et
al., Federal Practice and Procedure § 2727, at 490 (2d ed. 1998)
(noting that although "[t]he burden on the nonmoving party is not
a heavy one," the party is "required to show specific facts . . .
that present a genuine issue worthy of trial").  To defeat a
summary judgment motion, a party "must do more than simply show
that there is some metaphysical doubt as to the material facts."
Matushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S.
574, 586 (1986).  Similarly, our "indulg[ence of] all reasonable
inferences" in the nonmoving party's favor is bounded by that

                              -13-

party's obligation to support the alleged factual controversy with evidence that is neither "conjectural [n]or problematic."  Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (internal quotation marks omitted).

A.        The FCRA Claim

          1.    There Is a Private Cause of Action against Furnishers under the FCRA, 15 U.S.C. §§ 1681n-o, 1681s-2(b), and the Alleged Breach of the Duty to Investigate Is Evaluated under an Objective Reasonableness Standard

          As a preliminary matter, we dispose quickly of the question of whether there is a private cause of action under 15 U.S.C. § 1681s-2(b), as the question is related to our jurisdiction. See, e.g., United States v. Hilario, 218 F.3d 19, 22 (1st Cir. 2000) ("Jurisdictional issues have primacy of place in appellate review . . . .").  We also address the meaning of the term "investigation" in that section, a more recent addition to the FCRA.

          Congress, recognizing abuses in the burgeoning credit reporting industry, originally "enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007); see also 7 Kenneth M. Lapine et al., Banking Law § 153.02, at 153-5 to -7(2009 ed.).  The FCRA imposes obligations on CRAs and users of consumer information and provides for enforcement by various federal agencies.  See, e.g., 15 U.S.C.

-14-

§ 1681s. The act also expressly creates a private cause of action, enabling consumer suits for willful or negligent noncompliance with its requirements. Id. § 1681n-o. See generally Lapine et al., supra § 153.03, at 153-11 to -12; id. § 153.09, at 153-128. Plaintiffs may recover actual damages for negligent violations, 15 U.S.C. § 1681o(a)(1), and actual or statutory and punitive damages for willful ones, id. § 1681n(a)(1)-(2); Safeco, 551 U.S. at 53. There is no basis for any claim of willful violations on this record, so only actual damages are at issue.

In 1996, Congress substantially amended the FCRA, and those amendments are involved here. See, e.g., H.R. Rep. No. 108-396, at 1753-54 (2003) (Conf. Rep.). Among the changes adopted was a new section governing the responsibilities of so-called "furnishers"[7] of information to CRAs. Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, ch. 1, sec. 2413, § 623, 110 Stat. 3009-426, 3009-447 to -449 (codified as amended at 15 U.S.C. § 1681s-2). This addition was intended to close an identified "gap in the FCRA's coverage," whereby even dutiful investigations of consumer disputes by CRAs could be frustrated by furnishers' irresponsible verification of inaccurate information,

---

[7] Any person with relevant data about a consumer's financial activity may voluntarily provide it to a CRA, but "[t]he most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." H.R. Rep. 108-263, at 24 (2003).

-15-

without legal consequence to the furnishers. S. Rep. No. 103-209, at 6 (1993). Verizon NE is sued here as a furnisher of information under that section.

Under § 1681s-2, furnishers may not provide inaccurate information to consumer reporting agencies, 15 U.S.C. § 1681s-2(a)(1), and also have specific duties in the event of a dispute over furnished information, id. § 1681s-2(b). Only the second of these duties is subject to a private cause of action. Chiang's appeal concerns the latter obligation--Verizon NE's investigation into disputed information. To understand his argument, we outline both provisions of the statute.

Section 1681s-2(a) prohibits any person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." Id. § 1681s-2(a)(1)(A). Congress expressly limited furnishers' liability under § 1681s-2(a) by prohibiting private suits for violations of that portion of the statute. Id. 1681s-2(c)(1).

Section 1681s-2(b), the provision at issue in this case, outlines a furnisher's duties when a consumer disputes the completeness or accuracy of information in their credit report. Under the FCRA, consumers generally notify CRAs of such disputes. See id. § 1681i(a)(1). Although a consumer may dispute credit information directly to a furnisher, as Chiang has done, the

-16-

consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification.[8]

When a customer disputes credit information to a CRA, the CRA must advise the furnisher of that data that a dispute exists and provide the furnisher with "all relevant information regarding the dispute that the agency has received from the consumer." Id. § 1681i(a)(2)(A). Once notified by a CRA, a furnisher must

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency . . . .;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . ., for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results

---

[8]      The FCRA was recently amended to allow consumers to notify furnishers of disputes directly.  See § 1681s-2(a)(8); Lapine et al., supra § 153.06, at 153-95.  However, there is no private cause of action for failure to properly investigate such a dispute, 15 U.S.C. § 1681s-2(c)(1), and Chiang has not asserted that he complied with the procedures for direct notification.  A notice of disputed information provided directly by the consumer to a furnisher does not trigger a furnisher's duties under § 1681s-2(b).  See, e.g., Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009).  On the facts of this case, we need not address how, if at all, a consumer's direct notification to a furnisher would impact a furnisher's later investigation triggered by CRA notification under § 1681s-2(b).

> of the reinvestigation promptly--(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

Id. § 1681s-2(b)(1); see also Lapine et al., supra § 153.06, at 153-96 to -97. Although a furnisher may choose to contact a consumer directly about a dispute reported to the furnisher by a CRA, "requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA." Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005).

The question before us is whether the act as amended creates a private cause of action for violations of § 1681s-2(b). The issue, given the exclusion of a private right of action in subsection 2(a), is whether to read a similar exclusion into § 1681s-2(b), despite the fact that the original statute created a private cause of action in consumers generally. 15 U.S.C. § 1681n-o. The statute, in our view, creates a private right of action in § 1681s-2(b).

In contrast to the express limitations on private causes of action under § 1681s-2(a), Congress included no such restriction on violations of § 1681s-2(b). Moreover, when it amended the FCRA to include responsibilities for furnishers, Congress expanded the statute's private cause of action from allowing suits against CRAs and users of consumer information to creating a cause of action against "any person" who violated the statute. See Nelson v. Chase

-18-

Manhattan Mortgage Corp., 282 F.3d 1057, 1060 (9th Cir. 2002) ("[W]ho else except furnishers could Congress have had in mind when it introduced 'any person' into the statute?"). Furnishers are persons who could violate § 1681s-2(b).

We join the vast majority of courts to have considered this issue in holding that a plain reading of the FCRA's text indicates that a private cause of action exists for individuals seeking remedies for furnishers' violations of § 1681s-2(b). See, e.g., Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008); Westra, 409 F.3d at 826-27; Nelson, 282 F.3d at 1060; Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1010-11 (S.D. Iowa 2003) (collecting cases); see also Lapine et al., supra § 153.06, at 153-98 & n.23 (collecting cases). But see Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 502 (W.D. Tenn. 1999).

This leaves the question of the extent of a furnisher's investigation obligation under § 1681s-2(b). The statute does not define the term "investigation" and is apparently intended to give the furnisher some flexibility. We know that the investigation is meant to determine if the disputed information is "incomplete or inaccurate." Mere incompleteness, however, is not enough; the incompleteness must be such as to make the furnished information misleading in a material sense. See Saunders, 526 F.3d at 148 (holding that a furnisher may be held liable under § 1681s-2(b) for

-19-

failure to report information as disputed when the omission is "misleading in such a way and to such an extent that it can be expected to [have an] adverse[] effect") (alteration in original) (internal quotation marks omitted).[9]  We agree generally with the Fourth Circuit's observation that "[i]t would make little sense to conclude that, in creating a system intended to give consumers a means to dispute--and ultimately, correct--inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, <u>un</u> reasonable [sic] inquiries by creditors." <u>Johnson</u> v. <u>MBNA Am. Bank, NA</u>, 357 F.3d 426, 430-31 (4th Cir. 2004) (citing cases interpreting CRAs' analogous duty to investigate as requiring reasonable investigations); <u>see also</u> <u>Gorman</u>, 584 F.3d at 1156-57.

We also hold that the reasonableness of the investigation is to be determined by an objective standard.  <u>See</u> <u>Gorman</u>, 584 F.3d at 1156-57.  The burden of showing the investigation was unreasonable is on the plaintiff.  <u>See</u> <u>Gorman</u>, 584 F.3d at 1157; <u>Westra</u>, 409 F.3d at 827; <u>Johnson</u>, 357 F.3d at 429-31.

There is more to a plaintiff's burden of proof.  We recently considered what a plaintiff must show in order to carry his burden in a related context under the FCRA.  In <u>DeAndrade</u>, we

---

[9]   Here, any claim of incompleteness would be unavailing. On this record, Verizon NE's failure to report Chiang's disputes would not have been "misleading in a material sense."  <u>See</u> <u>Saunders</u>, 526 F.3d at 148.

-20-

addressed a plaintiff's suit against a CRA, not a furnisher, for the CRA's alleged failure, upon being notified of a consumer dispute, to "conduct a reasonable reinvestigation to determine whether the disputed information [wa]s inaccurate." 523 F.3d at 65 (quoting 15 U.S.C. § 1681i(a)) (emphasis added). We concluded that, absent a showing of actual inaccuracy on a reinvestigation, a plaintiff's claim against a CRA fails as a matter of law. Id. at 67-68. In other words, to carry his burden, the plaintiff had to demonstrate some causal relationship between the CRA's allegedly unreasonable reinvestigation and the failure to discover inaccuracies in his account. We hold that plaintiffs suing furnishers under § 1681s-2(b) must make the same showing, for several reasons.

First, a primary component of CRAs' reinvestigation requirement, at issue in DeAndrade, is CRAs' obligation to promptly notify a furnisher of challenged information of the consumer's dispute so that the furnisher can conduct an investigation pursuant to § 1681s-2(b). See 15 U.S.C. § 1681i(a)(2)(A); see also Gorman, 584 F.3d at 1156 ("[T]he CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher."). Given the considerable overlap between a CRA's responsibility to reinvestigate and a furnisher's duties under § 1681s-2(b), it would be inconsistent for plaintiffs to bear a

-21-

weightier burden in suits against a CRA under § 1681i(a) than in suits against furnishers under § 1681s-2(b).

The text and purpose of the statute support our interpretation. Section 1681i(a) mandates that a CRA reinvestigate reported information to determine whether the disputed data is "inaccurate." Section 1681s-2(b) imposes essentially the same obligation on furnishers of information, requiring them to determine if furnished information is "incomplete or inaccurate." "The FCRA is intended to protect consumers against the compilation and dissemination of inaccurate credit information." DeAndrade, 523 F.3d at 67. In light of the parallel obligations imposed on CRAs and furnishers--and the narrow purpose of the amendments to the FCRA--that same rationale supports requiring a showing of actual inaccuracy in suits against furnishers.

Practical considerations also point to our conclusion. As in DeAndrade, it is "difficult to see how a plaintiff could prevail on a claim for damages" based on an unreasonable investigation of disputed data "without a showing that the disputed information . . . was, in fact, inaccurate." Id.

We emphasize that, just as in suits against CRAs, a plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions. Id. at 68. Like CRAs, furnishers are "neither qualified nor obligated to resolve" matters

that "turn[] on questions that can only be resolved by a court of law." Id.

Finally, what is a reasonable investigation by a furnisher may vary depending on the circumstances. For instance, a more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute. The statute is clear that the investigation is directed to the information provided by the CRA. A CRA's notice informs a furnisher of "the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation." Gorman, 584 F.3d at 1157; see also 15 U.S.C. § 1681s-2(b)(1)(B) (requiring a furnisher to review "all relevant information" provided to it by a CRA). Accordingly, the central inquiry when assessing a consumer's claim under § 1681s-2(b) is "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." Gorman, 584 F.3d at 1157; see also Westra, 409 F.3d at 827.

If a CRA fails to provide "all relevant information" to a furnisher, then the consumer has a private cause of action against the CRA, 15 U.S.C. §§ 1681i(a)(2)(A), 1681n-o, but not against the furnisher.

We measure this case against these standards.

Against this backdrop, we hold that summary judgment was appropriate on Chiang's FCRA claim, since Chiang failed to raise a genuine issue of material fact that the investigation was unreasonable and also, independently, because he failed to show any actual inaccuracies that Verizon NE could have found through a reasonable investigation. Chiang has presented no evidence that the procedures employed by Verizon NE to investigate the reported disputes were unreasonable. Indeed, Chiang neither sought discovery on nor produced any evidence whatsoever about the procedures Verizon NE, through its agent CBCS, used. The only evidence on this point consists of a Verizon employee's uncontested affidavit detailing the procedures followed by Verizon NE's agent, CBCS, procedures which are, on their face, not unreasonable.[10] Chiang's failure to demonstrate actual inaccuracies in the furnished information that a reasonable investigation could have discovered is a separate, sufficient basis for summary judgment.

As an initial matter, we reject Verizon NE's argument that we should categorically exclude Chiang's affidavit, testimony, and letters from consideration when deciding whether his claim should survive summary judgment. Verizon NE relies on language in § 1681s-2(a)(1), which prohibits furnishers from knowingly

---

[10] The parties do not dispute that CBCS followed its standard procedures when investigating Chiang's claims.

reporting inaccurate information to CRAs in the first instance. That language, "[f]or purposes of subparagraph (A) [of § 1681s-2(a)(1)]," defined a furnisher's "reasonable cause to believe that [furnished] information is inaccurate" as "having specific knowledge, other than solely allegations by the consumer." 15 U.S.C. § 1681s-2(a)(1)(D) (emphasis added).

To start, the statute's plain language restricts this provision to subparagraph (A) of § 1681s-2(a)(1), which reads in part: "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." Id. § 1681s-2(a)(1)(A). It does not refer to the section of the FCRA of concern to us. Even more, the section of concern to us, § 1681s-2(b), does not mention a furnisher's "reasonable cause to believe," nor did Congress otherwise add language about a special evidentiary rule to subsection (b).

Absent such clear direction from the statutory text, we see no reason to adopt a per se rule excluding a plaintiff's affidavits, testimony, or letters when considering summary judgment on a claim under § 1681s-2(b). See Fed. R. Civ. P. 56(c)(2) (specifying that summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

-25-

fact") (emphasis added).[11]  As the Supreme Court recently noted in a different context, it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules."  Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2351 (2008).

To say that plaintiffs' own allegations are not per se excluded does not excuse them from having to meet the normal evidentiary requirements that they be relevant and competent.  The assertions made in Chiang's affidavit and letters are largely irrelevant to the FCRA claim at issue.  And even accepting these materials at face value, Chiang's unsupported allegations and unlikely inference raise no genuine issues of material fact.  See, e.g., Hoyos v. Telecorp Commc'n, Inc., 488 F.3d 1, 9 (1st Cir. 2007).

We go back to the relevant evidence.  Chiang relies solely on his own statements that Verizon NE was inaccurate in reporting he had not paid bills due and owing and his assertions that he had discussed his disputes with Verizon NE representatives, and he urges us to infer that, as a result, a reasonable investigation would have revealed Verizon NE's purported awareness

---

[11]  There are, of course, limits on what may be asserted in an affidavit at the summary judgment stage.  See, e.g., Nieves-Luciano v. Hernández-Torres, 397 F.3d 1, 5 (1st Cir. 2005) ("For purposes of summary judgment, an allegation in an affidavit must be based on personal knowledge and show affirmatively that the affiant is competent to testify to the matters stated therein.").

of inaccuracies in his account.  In particular, Chiang cites his affidavit, in which he details alleged overcharges to his account and conversations with Verizon NE representatives regarding these charges that he says took place in November 2005 and August 2006. Chiang also relies on several letters he sent to Verizon NE.  Two of these letters are chapter 93A demand letters, dated May 16, 2006--before Chiang's first state court lawsuit--threatening litigation if alleged errors in billing on his two accounts were not corrected.  The third, dated September 15, 2006, was sent to Verizon NE's attorney in the midst of Chiang's first state court suit and also threatened legal action if Verizon NE did not correct alleged overcharges.

At most, Chiang's proffered evidence would have shown that Verizon NE was aware he disputed the claimed amount and that, as of July 2006, the dispute was in state court.  Chiang's allegations are consistent with Verizon NE having reviewed his account and billing history and confirmed that the factual information, while disputed, was nonetheless accurate.  Cf. Gorman, 584 F.3d at 1159-60.  Despite ample opportunity over two years of pretrial proceedings, Chiang neither requested nor produced any evidence inconsistent with this information being accurate.

Also significant is that CBCS received only cursory notices from the CRAs, which were generalized and vague about the nature of Chiang's disputes.  The summary reports in CBCS's online

-27-

filing system indicate that the information reported largely consisted of broad, non-specific statements. We take them in turn.

Two reports said that Chiang "claims that this account was never paid late." However, Chiang has conceded that, beginning in August 2006, he did not pay any part of at least some of his disputed bills--so that cannot be the basis for an inaccuracy. Nor, for the same reason, can two other reports, which indicated that Chiang claimed to have "paid the original creditor before collection status or paid before charge-off."

Five reports said that Chiang "[c]laims inaccurate information," which was not in the least bit specific as to what information was disputed. Finally, several reports essentially said that the consumer disputed the account and the account was involved in litigation, which was true, was not challenged by Verizon NE, and again, provided no guidance as to either the specific information that was disputed or the basis for the dispute.

None of these reports alerted CBCS to which of the allegedly erroneous charges underlying Chiang's dispute was inaccurate. Nor did they evidence that a more searching inquiry may have been necessary. See Westra, 409 F.3d at 827 (holding that a furnisher was entitled to summary judgment on § 1681s-2(b) claim because merely verifying that account information was accurate as reported was reasonable, given "scant information" received from

the CRA); see also Gorman, 584 F.3d at 1157-58. We repeat that an investigation under § 1681s-2(b) is geared to the information provided by the CRA to the furnisher; if the CRA fails in its obligation to provide "all relevant information regarding the dispute," 15 U.S.C. § 1681i(a)(2)(A), then there is a claim against the CRA but not the furnisher.

Plaintiff's behavior in refusing to engage in discovery or provide any information about the reasonableness of Verizon NE's investigation procedures cannot be a shortcut to trial on the merits. The fact that Chiang put on evidence that he told Verizon NE he disputed various bills does not itself raise a reasonable inference that Verizon NE, through CBCS, conducted an unreasonable investigation or that the furnished information was not accurate. That evidence is not enough. See, e.g., Nat'l Amusements, Inc., 43 F.3d at 735.[12]

---

[12] The district court cited the Fourth Circuit's decision in Johnson in support of its determination that a reasonable jury might conclude that Verizon's procedures were unreasonable. Chiang, 2009 WL 102707, at *9. But several distinguishing factors suggest that Johnson cannot support the weight the district court placed upon it. First, in Johnson, the court noted that the furnisher's limited investigation could be deemed unreasonable in part because the furnisher's inquiry occurred after it had been notified by the CRA "of the specific nature of Johnson's dispute." Johnson, 357 F.3d at 431. Verizon NE had no such notice.

It is true the court emphasized that the defendant furnisher's investigation generally extended no further than its own computerized Customer Information System (CIS), but unlike CBCS's procedures, it apparently never provided for more searching review. Id. That was pertinent because the furnisher artificially restricted the review of its own computerized records. Investigators needed only to confirm "two out of four pieces of

Independently, we agree with the district court's application of our holding in DeAndrade to conclude that Chiang was required to present evidence of actual inaccuracies in his account that an alternative investigation might have uncovered. He has not done so.

Chiang's affidavit and letters show that he had several disagreements with Verizon NE over his billing, which extended into state court litigation; Verizon NE does not dispute this. Chiang has not, however, demonstrated that any of his substantive disputes with Verizon NE involved actual, factual inaccuracies in his billing that a reasonable investigation could have detected. To the extent that his argument reduces to the claim that any investigation that did not accept his allegations as accurate was by definition unreasonable, it fails. For this reason, too, summary judgment was appropriate on Chiang's FCRA claim.

B.        Summary Judgment Was Appropriate on Chiang's FDCPA Claim

Summary judgment was also appropriate on Chiang's FDCPA claim. We agree with the district court's determination that Verizon NE does not qualify as a "debt collector" under the

_____

information contained in the CIS--name, address, social security number, and date of birth--in order to verify [a consumer's] identity." Id. at 431 n.3. This truncated inquiry was how the furnisher confirmed to CRAs that their information was accurate. Id. at 431. As there is no evidence of similarly restricted investigation here, or anything else that might raise a genuine issue of material fact as to the reasonableness of Verizon NE's investigation, summary judgment was appropriate.

statute. Chiang's assertions to the contrary are either wholly unsupported by the record or waived.

The FDCPA was enacted to protect debtors from abusive debt collection practices. 15 U.S.C. § 1692(e); see also Lapine et al., supra § 155.02, at 155-6. To that end, it regulates debt collectors' tactics and, inter alia, creates a private cause of action for victims of "oppressive or offensive collection agency behavior." Lapine et al., supra § 155.02, at 155-6. The statute defines "debt collector" as any individual in a business whose "principal purpose . . . is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).

Creditors collecting on their own accounts are generally excluded from the statute's reach. Id. § 1692a(6)(F)(ii); cf. Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 22 n.4 (1st Cir. 2002). There is, however, a limited exception for "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Id. § 1692a(6). The exception was designed to combat "flat-rating," whereby creditors attempt to intimidate debtors by creating the false impression that a third party is participating in the debt collection process. See White v. Goodman, 200 F.3d 1016, 1017 (7th Cir. 2000).

-31-

Chiang claims that Verizon NE violated several provisions of the FDCPA, including its proscription of "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Although Verizon NE is not a debt collector, Chiang urges that it falls within the exception for creditors because the company attempted to collect its own debt from him under the allegedly deceptive name "Verizon Massachusetts." Chiang does not claim that Verizon NE was directly collecting its own debts, but instead asserts that debt collectors were instructed by Verizon NE to use the name "Verizon Massachusetts." Chiang's argument fails.

Assuming, dubitante, that the alleged practice would render Verizon NE a "debt collector" under the FDCPA, we nonetheless agree with the district court that Chiang's argument should be rejected as a mere conclusory allegation, utterly unsupported by the record. E.g., Estate of Bennett v. Wainwright, 548 F.3d 155, 177-78 (1st Cir. 2008). On appeal, Chiang insists, without further explanation or citation to caselaw, that the district court's failure to draw the inference that debt collectors received the name "Verizon Massachusetts" from Verizon NE was erroneous. His declaration does not make it so.

Absent any evidence that Verizon NE was collecting its own debts we need not reach Chiang's argument that the use of the name "Verizon Massachusetts" would deceive consumers,

unsophisticated or otherwise. Cf. Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 236 (2d Cir. 1998) (describing the "least sophisticated consumer" standard). We also do not address Chiang's argument that CBCS's communications with him on behalf of Verizon NE make Verizon NE a debt collector. This claim was not raised before the district court and is waived. E.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig., 533 F.3d 1, 5-6 & n.3 (1st Cir. 2008).

## III.

The district court's grant of summary judgment is affirmed.