[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11306
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-62094-BB

MARK DONALD HUNT,

Plaintiff - Appellant,

versus

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 25, 2019)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

In this putative class action, Mark Donald Hunt alleged that JP Morgan Chase ("JPMC") violated the Fair Credit Reporting Act (the "FCRA" or the "Act"), 15 U.S.C. § 1681 *et seq.* Specifically, Hunt alleged that JPMC violated § 1681s-2(b) of the Act by failing to adequately investigate consumers' disputes as to the accuracy of the information JPMC furnished to credit reporting agencies ("CRAs").

The district court granted JPMC's motion to dismiss. We agree with the district court's decision and therefore affirm.

## I.     BACKGROUND

### A. The Fair Credit Reporting Act

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To that end, the FCRA requires CRAs to adopt procedures balancing commercial needs for consumer credit information with consumers' rights to "confidentiality, accuracy, relevancy, and proper utilization" of their credit information. 15 U.S.C. § 1681(b). In later amendments to the FCRA, Congress extended the Act to cover not only CRAs, but also entities that supply consumer information to them—so-called "furnishers." S. Rep. No. 103-209, at 6 (1993). Those amendments closed a "gap in the FCRA's coverage": namely, what happens when a consumer disputes information provided

2

to the CRAs, and the CRAs attempt to verify the information, but a careless furnisher acts irresponsibly and leaves inaccurate information, without consequence or recourse, on a consumer's credit report. *Id*; *see also Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) (setting forth a history of the amendments to the FCRA).

As amended, the FCRA imposes two obligations on furnishers. First, under § 1681s-2(a), furnishers are prohibited from "furnish[ing] any information relating to a consumer to any [CRA] if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Second, under § 1681s-2(b), furnishers are required to take certain actions once notified by a CRA that a consumer disputes the accuracy or completeness of her furnished information. *Id.* § 1681s-2(b); *see also id.* § 1681i(a)(2) (requiring CRAs to notify furnishers of consumer disputes). A furnisher must "(A) conduct an investigation with respect to the disputed information;" "(B) review all relevant information provided by the [CRA];" and "(C) report the results of the investigation to the [CRA]." *Id.* § 1681s-2(b)(1). If the investigation reveals that the information is incomplete, inaccurate, or unverifiable, the furnisher must "modify" the furnished information, "delete" it, or "permanently block the reporting of that item of information" to CRAs. *Id.* § 1681s-2(b)(1)(E). Hunt's claim is based on § 1681s-2(b), at issue in this appeal.

3

**B. Factual Background**

To purchase property in Coconut Creek, Florida, Hunt executed a note and a mortgage in exchange for a $162,000 loan from JPMC's predecessor in interest.[1] In December 2012, Hunt missed a payment on the loan. In response, JPMC sent Hunt an "Acceleration Warning," advising that he was in default.[2]

Hunt continued to fail to make his past-due payments. In the spring of 2013, JPMC began reporting to CRAs—Experian, Equifax, and TransUnion—that Hunt's account was 120 days past due. In May 2013, JPMC filed a verified complaint to foreclose the mortgage in the circuit court of Broward County, Florida (the "Foreclosure Action"), declaring the full amount payable under the note to be due and seeking acceleration of the outstanding balance.

The circuit court entered a $123,836.94 Final Judgment of Foreclosure (the "Foreclosure Judgment") in JPMC's favor in May 2014. In March 2015, JPMC closed Hunt's account after transferring it to another lender. Three months after JPMC closed the account, in June 2015, Hunt paid the Foreclosure Judgment.

---

[1] Because we are reviewing the district court's grant of a motion to dismiss, we recite the facts as Hunt alleged them. *See Adinolfe v. United Techs. Corp.,* 768 F.3d 1161, 1169 (11th Cir. 2014). We may also consider attachments to the complaint when they are central to the plaintiff's claim and their authenticity is not challenged. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

[2] Although the record indicates that Washington Mutual was the original mortgagee, nothing in the record clarifies how JPMC lawfully acquired the mortgage. We note, however, that neither party disputes that JPMC had lawfully acquired the mortgage by the time Hunt defaulted on his payment obligations.

4

Two years after he paid the Foreclosure Judgment, Hunt retrieved his credit reports and saw that, between May 2013 and February 2015, JPMC had reported his account as 120 days past due. Hunt sent letters to the three CRAs: (1) notifying them that he disputed the accuracy of information contained in the reports indicating that he was "120 days or more delinquent and/or missed a monthly payment pursuant to a 'Primary or secondary mortgage' for (22) twenty-two months beginning in May 2013"; (2) requesting that they "provide prompt notice of this dispute to the furnisher . . . , [JPMC]"; and (3) requesting that they "promptly delete such inaccurate and incomplete information" from his credit reports. Doc. 1-4 at 3, 6, and 9.[3] The CRAs, in turn, sent notice to JPMC, as a "furnisher" of consumer credit information under the FCRA, that Hunt disputed the information regarding the May 2013 – February 2015 period that it had provided to the CRAs.

Equifax and TransUnion conducted investigations and returned their results to Hunt in the summer of 2017.[4] Equifax's investigation confirmed that JPMC had furnished accurate information regarding Hunt's delinquency between May 2013 and February 2015. TransUnion stated only that it had reviewed Hunt's allegations; made changes to Hunt's credit score based on that information, where

---

[3] "Doc. #" refers to the numbered entries on the district court's docket.

[4] Experian, meanwhile, asked Hunt for more information, which Hunt supplied.

possible; and asked JPMC to review the case, verify its furnished information, and respond to Hunt's claims. The updated credit reports attached to the investigation results included descriptions of Hunt's now-closed account with JPMC. Although JPMC stopped furnishing monthly updates of Hunt's payment status to CRAs when it closed Hunt's account in March 2015, the CRAs nonetheless described the account as past due as of July 2017, more than two years after Hunt paid the Foreclosure Judgment.

Hunt continued to press his dispute. After receiving the investigation results, he informed JPMC and the CRAs that he intended to sue JPMC. In response, JPMC told Hunt that it had provided to the CRAs only accurate information about his account. Again, Hunt pulled his credit reports from the CRAs, and the reports contained the same information as they had before.

### C. Procedural Background

Hunt filed a putative class action suit against JPMC, asserting that JPMC had failed to comply with its duty to conduct an adequate investigation under FCRA § 1681s-2(b), in willful and negligent violation of §§ 1681n and 1681o, respectively. His allegations concerned two pieces of information contained in his credit reports.

First, Hunt alleged that JPMC "inaccurately" reported to CRAs that he was "120 days or more delinquent and/or missed a monthly payment" for 22 months

6

beginning in May 2013, when JPMC filed the Foreclosure Action, and continuing through February 2015.  Doc. 1 ¶ 46.  Notably, however, Hunt did not dispute that he failed to make payments between December 2012 and February 2015.  Rather, he contended that the filing of the Foreclosure Action in May 2013 relieved him of any obligation to make monthly mortgage payments.  On this theory, Hunt asserted that if JPMC had "conducted a reasonable investigation and/or reinvestigation, [it] would have verified that the mortgage and loan account had been accelerated and Plaintiff no longer had t[he] option [from May 2013 to February 2015] of making monthly installment payments pursuant to the terms of the original Note and Mortgage, thereby rendering the consumer information being furnished by [JPMC] . . . incomplete and/or inaccurate."  *Id.* ¶ 86.

Second, Hunt alleged that, even after he paid the Foreclosure Judgment in June 2015, JPMC "fail[ed] to accurately and/or completely report to the CRAs that [he] fully satisfied his obligations under the loan and mortgage account held by [JPMC]."  Doc. 1 ¶¶ 104.vii, 111.vi.  He pointed to the updated credit reports Equifax and TransUnion attached to their investigation results, which indicated that the account was past due as of July 2017.  Hunt did not allege, however, that he ever notified the CRAs that he disputed his account's 2017 past-due status— whether in his original dispute letters or in his intent-to-sue letters—or that the

CRAs had ever notified JPMC that he disagreed that his account was still past due as of 2017.

As a result of JPMC's alleged FCRA violations, Hunt contended, he and other similarly situated individuals suffered "damage to their creditworthiness, impairment of their ability to rebuild and/or build their creditworthiness, impairment of their ability to obtain credit on favorable terms and/or obtain credit whatsoever," and other injuries, including "severe financial and emotional harm." *Id.* ¶ 88.

JPMC filed a motion to dismiss Hunt's complaint.  JPMC pointed out that Hunt did not dispute that he had failed to pay his mortgage for a period of two years.  JPMC also noted that all the documents attached to Hunt's complaint accurately reported Hunt's failure to pay.  Because it accurately furnished the information that Hunt had failed to make payments, JPMC contended that the complaint should be dismissed.  In addition, JPMC argued that Hunt's contention that he was no longer obliged to make monthly payments once the loan was accelerated was "a legal argument, not a factual inaccuracy," and it therefore could not "form the basis of his FCRA claim."  Doc. 14 at 8.  Lastly, JPMC denied that it had any FCRA obligation to inform the CRAs of Hunt's satisfaction of the Foreclosure Judgment, which occurred after JPMC had transferred the account.

8

The district court granted JPMC's motion to dismiss the complaint. The district court reasoned that based on the "undisputed fact that [Hunt] was in default from May 2013 to February 2015," JPMC "correctly reported the status of [Hunt's] account from May 2013 to February 2015." Doc. 29 at 9, 11. Because JPMC reported accurate information, it had satisfied its obligations under the FCRA. The district court agreed with JPMC that Hunt's allegation that he had no obligation to make monthly payments on the "mortgage following acceleration [wa]s a legal conclusion devoid of factual support"—and therefore an insufficient basis on which to bring a claim under § 1681s-2(b). *Id.* at 8. In addition, the district court held that Hunt failed to provide any "authority to support his claim that [JPMC] had any obligation to report the payoff [of the Foreclosure Judgment] *after* it transferred the account." *Id.* at 10 n.4. Finally, the district court dismissed the complaint with prejudice because no amendment could change the result, given that "[n]o valid cause of action exists." *Id.* at 11.

This is Hunt's appeal.

## II.    STANDARDS OF REVIEW

"We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008) (per curiam).

The court need not "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

We review for abuse of discretion orders dismissing actions with prejudice rather than allowing the plaintiff an opportunity to amend her complaint, *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006), though we review *de novo* the "underlying legal conclusion of whether a particular amendment to the complaint would be futile," *Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Betty K. Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005) (internal quotation marks omitted). Leave to amend need not be granted where amendment would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

## III.    LEGAL ANALYSIS

### A. The District Court Did Not Err in Determining that Hunt Failed to State a Claim that JPMC Violated the FCRA.

On appeal, Hunt argues that the district court erred in granting JPMC's motion to dismiss his claims for JPMC's allegedly willful and/or negligent violations of the FCRA.  Hunt alleges JPMC violated the FCRA with respect to two aspects of his credit reports:  (1) the 22 months between May 2013 and February 2015, in which the reports show he was 120 days delinquent on making his monthly mortgage payments and (2) his past-due status as of July 2017. Neither states a claim for relief.  We conclude that his allegations regarding the May 2013 – February 2015 period fail to state an FCRA claim because he cannot show that a reasonable investigation would have revealed that JPMC furnished inaccurate information to the CRAs.  We also conclude that his allegations regarding his past-due status as of July 2017 fail to state an FCRA claim because he never alleged that he disputed that part of his credit reports or that JPMC received notification from the CRAs of such a dispute.

As relevant here, § 1681i(a)(2)(A) of the FCRA provides that once in receipt of a dispute from a consumer, a CRA must notify the furnisher of the consumer's dispute.  15 U.S.C. § 1681(a)(2)(A).  Under § 1681s-2(b), after a furnisher receives notification from a CRA that a customer disputes the information it furnished, the

furnisher must conduct an investigation, review all relevant information provided by the CRA, and report its results to the CRA. *Id*. § 1681s-2(b)(1).

We previously have explained that § 1681s-2(b) contemplates three possible outcomes of a satisfactory investigation: (1) the information is accurate and complete, (2) the information is inaccurate or incomplete, or (3) the information cannot be verified. *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018). We evaluate under a reasonableness standard whether the furnisher has satisfied its obligation to conduct an investigation under § 1681s-2(b). *Id.* "When a furnisher ends its investigation by reporting that the disputed information has been verified as accurate, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Id.* (internal quotation marks omitted).

### 1. The 22-Month Delinquency Between May 2013 and February 2015

Hunt's complaint alleged that JPMC inaccurately reported that Hunt's payments were 120 days past due for the 22 months between May 2013, when JPMC filed the Foreclosure Action, and February 2015. However, his complaint did not allege that he in fact made payments between December 2012 and February 2015, nor does he make an argument to this effect on appeal. Thus, it is undisputed that JPMC accurately reported that Hunt was 120 days delinquent

12

during those 22 months.  "[A] plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, . . . the furnisher would have discovered that the information it reported was inaccurate or incomplete . . . ."  *Id.* at 1313 (emphasis omitted).  Because JPMC provided accurate information to CRAs, Hunt cannot demonstrate that a reasonable investigation would have uncovered an inaccuracy in that information.  *Id.*

Hunt argues nonetheless that JPMC furnished inaccurate information regarding the 22-month delinquency because the filing of the Foreclosure Action and acceleration of the loan relieved him of any obligation to make monthly payments.  As an initial matter, we are unconvinced by Hunt's argument that JPMC's filing of the Foreclosure Action relieved him of any obligation to make monthly payments on the mortgage.  *See Deutsche Bank Tr. Co. Americas v. Beauvais*, 188 So. 3d 938, 946-47 (Fla. Dist. Ct. App. 2016) (interpreting a mortgage provision identical to the one at issue here and determining that "despite acceleration of the balance due and the filing of an action to foreclose, the installment nature of a loan secured by such a mortgage continues until a final judgment of foreclosure is entered").

But even assuming Hunt ultimately turned out to be correct about his legal obligation to pay, his FCRA argument fails nonetheless.  A plaintiff must show a

13

factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b). *See Chiang*, 595 F.3d at 38 (determining that a "plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions" for a claim under § 1681s-2(b) (emphasis in original)). Whether Hunt was obligated to make payments on the mortgage after the Foreclosure Action was filed is a currently unresolved legal, not a factual, question. Thus, even assuming JPMC furnished information that turned out to be legally incorrect under some future ruling, JPMC's purported legal error was an insufficient basis for a claim under the FCRA.

### 2.  The Account's Past-Due Status as of July 2017

Hunt's complaint also alleged that JPMC failed to update the CRAs that Hunt paid the Foreclosure Judgment against him in June 2015. As a result, his credit reports continued to show that he was past due on the account as of July 2017. We need not decide whether JPMC had a duty under the FCRA to update the CRAs regarding Hunt's satisfaction of the Foreclosure Judgment after JPMC transferred the account to another lender in March 2015 because, even if JPMC had a duty to refresh the information it had previously furnished to CRAs, Hunt's complaint alleges a violation of § 1681s-2(b), which governs JPMC's *investigation* duties. That subsection requires furnishers to conduct investigations into consumer disputes only upon receiving notification of a dispute from a CRA. *See* 15 U.S.C.

14

§ 1681s-2(b)(1); *see also id.* § 1681i(a)(2)(A).  Hunt never alleged that JPMC received notification from the CRAs that he disputed his account's past-due status as of July 2017, *see id.* § 1681s-2(b)(1); that the CRAs provided notification of any such dispute to JPMC, *see id.* § 1681i-(a)(2)(A); or even that he contacted the CRAs to dispute that aspect of his credit reports.  Without receiving notification from the CRAs that Hunt disputed the information in his credit reports showing his account as past due as of July 2017, JPMC had no obligation to conduct a § 1681s-2(b) investigation.  Thus this allegation also fails to state a claim under the FCRA.

## B. The District Court Did Not Abuse Its Discretion in Dismissing Hunt's Complaint with Prejudice.

Lastly, we affirm the district court's decision to dismiss the complaint with prejudice rather than give Hunt an opportunity to amend.  Hunt undisputedly failed to make monthly mortgage payments between December 2012 and February 2015, which means that JPMC accurately reported to the CRAs that his account was 120 days past due between May 2013 and February 2015.  JPMC's accurate report in turn means that no amendment would change our conclusion that JPMC's investigation was adequate.  Similarly, his dispute letters and his intent-to-sue letters attached to his complaint do not indicate that he ever notified the CRAs that he disputed the accuracy of his credit reports' statement that his account was past due as of 2017, nor did he allege in his complaint or argue on appeal either that he sent other communications to the CRAs disputing the 2017 past-due status or that

15

JPMC ever received notification from the CRAs that he disputed that information in his credit reports. Hunt argues that "if given the opportunity to amend, [he] would be capable of sufficiently stating a plausible claim for relief beyond the speculative level." Appellant's Br. at 54. But he nowhere explains how he would overcome these factual deficiencies. Because any amendment would be futile, the district court did not abuse its discretion in dismissing his claims with prejudice. *Cockrell*, 510 F.3d at 1310.

## IV.    CONCLUSION

The district court properly dismissed Hunt's claims for willful and negligent violations of FCRA § 1681s-2(b). Hunt's complaint failed to show that (1) a reasonable investigation would have revealed that JPMC inaccurately furnished information that Hunt's account was 120 days past due between May 2013 and February 2015; and (2) JPMC received notice from the CRAs that Hunt disputed his July 2017 past-due status, without which JPMC had no obligation to investigate. Likewise, the district court did not abuse its discretion in dismissing his complaint with prejudice because any amendment would be futile.

**AFFIRMED.**