**Leonard J. ELMORE, Plaintiff,**

v.

**NORTH FORK BANCORPORATION, INC., Defendant.**

**No. 02 Civ. 10053(LAK).**

United States District Court, S.D. New York.

July 13, 2004.

Leonard J. Elmore, pro se.

Thomas P. Solferino, Solferino & Solferino, LLP, Mineola, NY, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This action under the Fair Credit Reporting Act[1] (the "Act") is before the Court on defendant's motion to dismiss or, alternatively, for summary judgment dismissing the complaint.

### Facts

The complaint, the allegations of which are accepted as true for purposes of this motion,[2] alleges the following.

### The Defaulted Loan

In 1993, Moses Elmore, Jr., plaintiff's father, obtained a mortgage loan on premises located in Jamaica, New York, from defendant's predecessor-in-interest. Although the title to the property was in plaintiff's name in 1976, the complaint is silent as to the status of legal title at the time the loan was obtained. Nevertheless, plaintiff was not an obligor on the mortgage note and never was indebted to defendant or its predecessor.

Moses Elmore died intestate in 1999. In an effort to protect the assets of the estate, plaintiff made a number of payments on the mortgage, and the bank began addressing correspondence concerning the loan to Moses Elmore in care of plaintiff. At no time, however, did plaintiff assume any obligations to the defendant or become an obligor on the note. When the probate proceeding became protracted, plaintiff ceased making mortgage payments. The mortgage went into default in

---

1. 15 U.S.C. § 1681 *et seq.*

2. The Court declines to consider the alternative motion for summary judgment dismissing the complaint, inasmuch as defendant's Rule 56.1 Statement is insufficient, the motion is supported principally by a declaration of an attorney who lacks personal knowledge of the facts, and defendant apparently has failed to provide requested discovery.

December 2000 and eventually became the subject of a foreclosure proceeding. The property was sold in March 2002. Proceeds more than sufficient to satisfy the bank's loan were placed in escrow and eventually disbursed in full satisfaction of the mortgage loan.

## The Credit Reports

At some point, the defendant bank reported the defaulted loan to a consumer credit reporting service and claimed that plaintiff was jointly responsible on the mortgage.

Plaintiff learned of the bank's report when he was denied a credit card. On October 29, 2001, he wrote to the bank, advised it of the inaccuracy, threatened legal action, and demanded that the bank cease disseminating false credit information, retract the information that it already had disseminated, and provide proof that it had done so.

The bank responded on November 14, 2001. It represented "that, as of October 31, 2001, the requisite information has been transmitted to the credit bureaus to correct this error" and apologized for any inconvenience.

In the summer of 2002, plaintiff sought to refinance his home mortgage. His mortgage broker requested a credit report from MR of America, which reported that plaintiff was in default on the North Fork mortgage. Plaintiff alleges that he was unable to refinance his mortgage in consequence of North Fork's erroneous report.

The complaint contains two claims for relief. The first alleges that defendant willfully and wantonly (a) furnished to consumer reporting agencies information that it knew or consciously avoided knowing was inaccurate, (b) did so after having been notified by plaintiff that the information was inaccurate, and (c) failed to correct and update the information it had provided. The second alleges that the same actions and omissions were negligent rather than willful and wanton violations of the statute.

## Discussion

The relevant substantive provisions of the Act are contained in 15 U.S.C. § 1681s–2, which provides in relevant part:

(a) Duty of furnishers of information to provide accurate information

(1) Prohibition

(A) Reporting information with actual knowledge of errors

A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate.

(B) Reporting information after notice and confirmation of errors

A person shall not furnish information relating to a consumer to any consumer reporting agency if

(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

(ii) the information is, in fact, inaccurate.

\*        \*        \*

(2) Duty to correct and update information

A person who—

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,

shall promptly notify the consumer reporting agency of that determination and provide to the agency any

corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency; and

(D) in the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

There is no serious dispute that the complaint alleges that defendant violated Section 1681s–2(a). It asserts that the bank willfully and wantonly reported that plaintiff was in default on the mortgage when it knew or consciously disregarded the fact that plaintiff never was an obligor on the loan. It alleges that the bank,

following its admission of its error, failed to correct its prior reports. It is at least susceptible of the inference that the bank, following its admission, continued to disseminate the false information. The bank nevertheless moves to dismiss on the ground that plaintiff lacks standing to sue or, to put the argument more properly, does not come within the remedial provisions of the statute.

Sections 1681n(a) and 1681o (a) create remedies for violations of Section 1681s–2, the former in favor of victims of willful and the latter in favor of victims of negligent failures to comply with the requirements of the Act. But what Congress gave with one hand in these sections, it partly took away in Sections 1681s–2(c) and 1681s–2(d).[3] The former, with an exception not here relevant, provides that "[s]ections 1681n and 1681o of this title do not apply to any failure to comply with subsection (a) of this section [15 U.S.C. § 1681s–2(a) ]." The latter states that "[s]ubsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section." As this action has not been brought by an appropriate federal or state authority, the bank argues, plaintiff has no right to sue based on alleged violations of Section 1681s–2(a).

Plaintiff tacitly acknowledges this. He claims, however, that he has stated a legally sufficient claim for relief under Section 1681s–2(b).

■ Although there is a division of authority, most courts to have considered the issue have concluded that consumers may pursue claims for willful or negligent noncompliance with Section 1681s–2(b).[4] The

---

**3.** *See Nelson v. Chase Manhattan Mtg. Corp.,* 282 F.3d 1057, 1059 (9th Cir.2002) ("consumer could sue for … violation [of § 1681s–2(a) ] were it not for §§ 1681s–2(c) and (d)").

**4.** *E.g., O'Diah v. New York City,* No. 02 Civ. 0274(DLC), 2002 WL 1941179, at *13 (S.D.N.Y. Aug.21, 2002) (collecting cases).

Court so assumes, albeit without deciding the point. Nevertheless, plaintiff's claim fails.

There is little doubt that plaintiff has alleged that the bank, following its receipt of plaintiff's October 29, 2001 letter and its acknowledgment of error, failed to correct and update the information it had supplied to consumer reporting agencies and, perhaps, continued to furnish false information. Reprehensible as that may be, assuming it occurred, the question remains whether such behavior comes within Section 1681s–2(b).

Section 1681s–2(b) takes effect once the reporting person "receiv[es] notice pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided." Section 1681i(a) requires a consumer reporting agency that is notified by consumers that information in its files is disputed to reinvestigate the current accuracy of the information or delete it[5] and, within five business days, to notify the person who furnished it with the information of the dispute.[6] In this case, however, plaintiff did not complain to the credit reporting agency. He got a copy of his credit report, saw that the negative information came from the defendant, and went directly to the defendant. The defendant therefore argues that it is not subject to suit because the notice it received of the dispute concerning the reported default, plaintiff's October 29, 2001 letter, was not sent by a consumer reporting agency and therefore was not "notice pursuant to section 1681i(a)(2)." Since there is no claim

that it ever received a "notice pursuant to section 1681i(a)(2)," it maintains, it never became subject to Section 1681s–2(b), and the complaint fails to state a claim upon which relief may be granted.

At first blush, plaintiff's position is quite sympathetic. Even granting Congress' manifest purpose to limit claims against furnishers of information to credit reporting agencies to furnishers who act inappropriately after being notified of the existence of a dispute,[7] this furnisher of credit information concededly knew of the dispute—indeed, it had admitted its error and apologized. Yet, if the allegations of the complaint are true, it continued to disseminate the false information. But sympathy is insufficient to win the day for the plaintiff.

The terms of the statute are quite clear. Even assuming the existence of a private right of action for violation of Section 1681s–2(b), that right of action exists only for violations post-dating the furnisher's receipt of a report *from the credit reporting agency.* If Congress had meant to create liability for violations once the furnisher had notice from any source of the existence of a dispute, it would have been a simple matter to say so. The fact that it nevertheless limited Section 1681s–2(b) is entitled to respect. Indeed, to rule for plaintiff would be to read the opening phrase of the statute—"[a]fter receiving notice pursuant to section 1681i(a)(2) of this title"—as if the words "pursuant to section 1681i(a)(2)" did not exist. This Court is not free to take a blue pencil to statutes of the United States.[8]

---

**5.** 15 U.S.C. § 1681i(a)(1).

**6.** *Id.* § 1681i(a)(2).

**7.** *See, e.g., Nelson,* 282 F.3d at 1060 ("Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished").

**8.** *See, e.g., Alaska Dept. of Env. Conserv. v. Environmental Prot. Agy.,* —— U.S. ——, 124 S.Ct. 983, 1002 n. 13, 157 L.Ed.2d 967 (2004) (quoting *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)).

This principle is especially applicable here. As the Ninth Circuit observed:[9]

The statute has been drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs [credit reporting agencies], furnishers of credit information, and users of credit information. It is not for a court to remake the balance struck by Congress....

### Conclusion

The complaint fails to state a claim upon which relief may be granted because it fails to allege that the bank violated the duties imposed upon it after receiving notice of the existence of a dispute from a credit reporting agency. Accordingly, defendant's motion to dismiss the complaint is granted.

SO ORDERED.

---

**9.** *Nelson,* 282 F.3d at 1060.