**19-3241**
*Sprague v. Salisbury Bank & Tr. Co.*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term 2019

(Submitted: May 18, 2020 | Decided: August 10, 2020)

Docket No. 19-3241

ROBERT C. SPRAGUE, C. ROBIN ZEIGLER,

*Plaintiffs-Appellants*,

v.

SALISBURY BANK AND TRUST COMPANY,

*Defendant-Appellee.*†

————————

Before:

SACK, WESLEY, CHIN, *Circuit Judges*.

Appellants Robert C. Sprague and C. Robin Zeigler appeal the dismissal of their amended complaint against Salisbury Bank and Trust Company ("Salisbury"). Appellants allege that Salisbury violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, and related state law causes of action by, *inter alia*, failing to correct information contained in Sprague's credit report after being notified that the information was not correct. The United States District Court for the District of Connecticut (Bryant, *J.*) dismissed Appellants' Amended Complaint with prejudice because Appellants did not allege that they reported the discrepancy to a consumer reporting agency or that a consumer reporting agency

———————————————

† The Clerk of the Court is directed to amend the official caption as set forth above.

notified Salisbury of Sprague's complaint. Because we agree that Appellants' allegation that they notified Salisbury directly of their dispute is insufficient to state a claim under 15 U.S.C. § 1681s–2(b), we **AFFIRM** the district court's decision.

————————————

Clifford Thier, Thier Law Offices, LLC, West Hartford, CT, *for Plaintiffs-Appellants*.

Thomas C. Blatchley, Joseph J. Blyskal, Gordon Rees Scully Mansukhani, LLP, Glastonbury, CT, *for Defendant-Appellee*.

————————————

PER CURIAM:

Appellants Robert C. Sprague and C. Robin Zeigler appeal from a dismissal of their amended complaint against Salisbury Bank and Trust Company ("Salisbury") alleging that Salisbury violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and related state law causes of action. Specifically, they claim that Salisbury failed to perform a reasonable investigation and correct inaccurate information contained in Sprague's credit report. The United States District Court for the District of Connecticut (Bryant, *J.*) determined, *inter alia*, that, because Appellants did not allege that they reported the error to a consumer reporting agency ("CRA") or that a CRA notified Salisbury of the discrepancy, the Amended Complaint must be dismissed for failure to state a

2

claim. Because we agree that the allegation that Appellants notified Salisbury directly of their dispute is, standing alone, insufficient to state a claim under 15 U.S.C. § 1681s–2(b), we affirm.

## BACKGROUND

### I. Facts

The relevant facts are straightforward: In 2004, Appellants borrowed $109,600 from Salisbury to finance the purchase of a house located in North Canaan, Connecticut. Later that year, Appellants refinanced their mortgage, borrowing an additional $250,000 from Salisbury.

In August 2011, Salisbury initiated foreclosure proceedings, resulting in a judgment of strict foreclosure in favor of Salisbury.[1] The parties stipulated to a $40,000 deficiency judgment, which the Connecticut Superior Court approved on April 28, 2014.

---

[1] In Connecticut, a court may order foreclosure by sale or strict foreclosure. *See* Conn. Gen. Stat. § 49–24. Under Connecticut law, a decree of strict foreclosure "finds the amount due under the mortgage, orders its payment within a designated time and provides that should such payment not be made, the debtor's right and equity of redemption will be forever barred and foreclosed." *Nat'l City Mortg. Co. v. Stoecker*, 888 A.2d 95, 100 (Conn. App. Ct. 2006). When a judgment of strict foreclosure "becomes absolute and all rights of redemption are cut off," it "constitutes an appropriation of the mortgaged property to satisfy the mortgage debt." *Id.* (citation omitted).

On February 15, 2016, Sprague ordered a credit report (the "Report"). The Report inaccurately indicated "that the mortgage on the foreclosed [h]ouse was still open and payments had not been made in more than two years." J.A. 53 ¶ 16. Appellants "notified [Salisbury] of the error," *id.* at ¶ 21, and on March 7, 2016, Salisbury acknowledged that the loan had been erroneously reported as "open" but that "[a] correction ha[d] been made to report this loan as closed," *id.* at 57. Salisbury also indicated that the "information [would] be supplied to the credit reporting agencies." *Id.* Appellants subsequently learned, however, that the bank did not correct the erroneous information until November 30, 2016. *See id.* at 53 ¶ 19.

## II. Procedural History

Appellants filed their initial complaint on August 17, 2018.[2] On September 25, 2018, Salisbury moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Appellants successfully cross-moved to amend their complaint and filed their Amended Complaint on October 22, 2018. As relevant here, the Amended Complaint alleges that Salisbury violated the FCRA by

---

[2] In September 2018, Salisbury removed this action from the Connecticut Superior Court to the United States District Court for the District of Connecticut.

"negligently and willfully fail[ing] to perform a reasonable reinvestigation and correction of inaccurate information," J.A. 53 ¶ 21, and "engag[ing] in behavior prohibited by [the] FCRA by failing to correct errors in the information that it provided to credit reporting agencies," *id.* at 54 ¶ 23, "after [Appellants] notified [Salisbury] of the error," *id.* at 53 ¶ 21. The Amended Complaint does not reference a specific provision of the FCRA.[3]

On November 19, 2018, Salisbury moved to dismiss the Amended Complaint, arguing, *inter alia*, that its "duty of investigation is only triggered after a furnisher of information receives notice of a dispute from a consumer reporting agency" and that Appellants "fail[ed] to allege that [Salisbury] ever received notice of a dispute from a consumer reporting agency." *Id.* at 58–59.

On March 11, 2019, following three extensions of time to respond to Salisbury's motion to dismiss, Appellants cross-moved to amend their complaint for a second time. The district court denied Appellants' motion but allowed Appellants to refile within seven days with a proposed second amended complaint. Appellants complied on April 1, 2019. Ultimately, the district court

---

[3] The Amended Complaint also contained three additional claims under state law. Appellants do not contend that the district court erred in dismissing these claims.

5

rejected the proposed complaint because "[it] provide[d] no substantive additions, adding only background information about the Fair Credit Reporting Act, dormant facts which could have been included with either of [Appellants'] first two complaints, and irrelevant information." *Id.* at 7. On July 18, 2019—eight months after Salisbury moved to dismiss—Appellants filed their opposition to Salisbury's motion to dismiss.

The district court dismissed the Amended Complaint. Because the Amended Complaint failed to allege a statutory basis for Appellants' FCRA claim, the district court considered two potential available bases for relief. To the extent Appellants sought relief for a violation of 15 U.S.C. § 1681s–2(a), the district court concluded that they failed to state a claim because there is no private right of action under that subsection of the FCRA. *See id.* at 209–10 (citing *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (per curiam)). If Appellants' claim was premised on a violation of Section 1681s–2(b), the district court likewise concluded that they again failed to state a claim because they (1) did not plead that they notified a CRA of the disputed accuracy of Salisbury's reports, and (2) did not allege that a CRA notified Salisbury of the dispute. *See id.* at 211–16.

6

Leave to amend was not warranted in the court's view because Appellants "failed to cure deficiencies by amendments previously allowed." *Id.* at 223 (internal quotation marks and citation omitted). Further, Appellants presented no basis for the district court to believe they could allege facts withstanding a 12(b)(6) motion, and therefore, "further leave to amend would be futile." *Id.* (citation omitted).

The district court entered judgment; Appellants timely appealed.

## DISCUSSION[4]

### I. The Amended Complaint Fails to State a Claim Under 15 U.S.C. § 1681s–2(b)

"The [FCRA] regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman*, 702 F.3d at 150 (citing 15 U.S.C. § 1681(b)). Accordingly, to ensure credit reports are accurate, the FCRA imposes certain duties on CRAs,

---

[4] The standard of review is not in doubt. We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) *de novo*, "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). We review the district court's denial of leave to amend for abuse of discretion, *Longman*, 702 F.3d at 150, but we review *de novo* its legal determination that amendment would be futile, *Hutchison v. Deutsche Bank Sec., Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).

users of consumer reports, and furnishers of information to CRAs, such as Salisbury.

Section 1681s–2 sets forth an information furnisher's responsibilities under the FCRA, delineating two separate categories of duties. *See* 15 U.S.C. § 1681s–2. Section 1681s–2(a) details a furnisher's responsibility to provide accurate information, including a duty to refrain from knowingly reporting inaccurate information, *see* 15 U.S.C. § 1681s–2(a)(1), and to correct information discovered to be inaccurate, *see id.* § 1681s–2(a)(2). As the district court correctly concluded, the FCRA does not provide a private cause of action for violations of Section 1681s–2(a). *See* 15 U.S.C. § 1682s–2(d); *Longman*, 702 F.3d at 151 ("[T]he statute plainly restricts enforcement of [15 U.S.C. § 1681s–2(a)] to federal and state authorities.").[5]

Section 1681s–2(b) outlines a furnisher's duties following a dispute regarding the completeness or accuracy of a consumer's credit report. Under Section 1681s–2(b), once a furnisher "receiv[es] notice" of a dispute, the furnisher must:

> (A) conduct an investigation with respect to the disputed information;

---

[5] Appellants agree and do not appeal the dismissal of their complaint based on a Section 1681s–2(a) theory of liability.

8

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) . . .;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . .; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . ., (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s–2(b)(1). The statute is clear that the notice triggering these duties must come from a CRA, not the consumer. *See* 15 U.S.C. § 1681i(a)(2) (providing that once a "consumer reporting agency receives notice of a dispute from any consumer . . . the agency shall provide notification of the dispute to any person who provided any item of information in dispute"); *id.* § 1681s–2(b); *see also* *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) ("Notice under § 1681i(a)(2) must be given by a credit reporting agency, and cannot come directly from the consumer."); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("[Section 1681s–2(b)] obligations are triggered upon notice of dispute—that is, when a person who furnished information to a CRA receives

9

notice from the CRA that the consumer disputes the information." (internal quotation marks omitted)). Accordingly, Section 1681s–2(b) is not implicated simply because a consumer contacts a furnisher such as Salisbury regarding inaccuracies in her credit report.

Appellants do not allege that a CRA notified Salisbury of their dispute concerning the information in the Report. Appellants do not even allege that they notified a CRA of the discrepancy. The Amended Complaint alleges only that, after receiving the Report, Sprague directly notified Salisbury of the Report's inaccuracy. *See* J.A. 53. This alone is insufficient to state a claim under Section 1681s–2(b). *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 & n.8 (1st Cir. 2010); *Gorman*, 584 F.3d at 1154; *Elmore v. North Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004).

Appellants contend that Salisbury based its motion to dismiss solely on the failure of a CRA to notify the bank of an inaccuracy in Sprague's credit report. They seem to imply that by limiting its objection to the failure to allege notice from a CRA to Salisbury, the bank could not be heard to complain about the absence of a factual allegation regarding notice by Sprague to the consumer reporting agency. *See* Appellants' Br. 19–20. We disagree. The complaint gave no guidance as to

10

what section of the FCRA Appellants sought to employ in the litigation. Salisbury argued that Appellants "*only allege that they disputed the debt with [Salisbury,]*" and therefore, the Amended Complaint "is devoid of any allegations that a [CRA] informed [Salisbury] of their alleged dispute," which is a "prerequisite for liability under § 1681s–2(b)(1)." J.A. 70–71 (emphasis added). This put the sufficiency of Appellants' Section 1681s–2(b) claim before the district court. The district court agreed that Section 1681s–2(b) was the only available statutory basis for liability under the FCRA and measured the complaint by the standard therein. *See id.* at 211–17.

Under the statute, a CRA need only notify a furnisher about any disputes concerning the accuracy of credit information after the CRA receives such notice from the consumer—either directly or indirectly through a reseller.[6] *See* 15 U.S.C.

---

[6] Though not at issue here, the term "reseller" is defined as a consumer reporting agency that:

> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and

> (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u).

11

§ 1681i(a)(2) (requiring consumer reporting agencies to report a dispute to the furnisher within five business days "beginning on the date on which a consumer reporting agency *receives notice of a dispute from any consumer or a reseller*" (emphasis added)). Indeed, the CRA is required to include "all relevant information regarding the dispute that the [CRA] has received from the consumer" in its notice to the furnisher. *Id.* § 1681i(a)(2)(A). And, in turn, a furnisher is only required to investigate a dispute upon receiving the CRA's notice. Thus, the chain of events leading up to the furnisher's duty to investigate under Section 1681s–2(b) begins with the consumer's notice to a CRA. The district court did not err when it considered whether Appellants alleged that they notified a CRA of their dispute—even if Salisbury did not specifically articulate this point.

In alleging that Salisbury violated the FCRA by continuing to furnish inaccurate information after receiving notice of an error directly from the consumer, Appellants effectively seek to employ the private right of action permitted under Section 1681s–2(b) as a means of enforcing Salisbury's general obligation under Section 1681s–2(a) not to knowingly furnish inaccurate information. Section 1681s–2(b) imposes on Salisbury a more specific duty, triggered only by a proper chain of notice. Here, Appellants have alleged no facts

12

indicating that Salisbury received notice from a CRA regarding the inaccuracies in the Report. The Amended Complaint alleges only that Appellants notified Salisbury about the erroneous information. This alone does not state a valid claim under Section 1681s–2(b).[7]

## II. The District Court Did Not Err in Denying Leave to Amend

Appellants also contend that the district court erred in dismissing the complaint with prejudice. *See* Appellants' Br. 27. We disagree. The district court found that, notwithstanding the several extensions of time to respond to Salisbury's motion to dismiss and a previous chance to amend, Appellants failed to cure the alleged deficiency. *See* J.A. 223. Additionally, the district court noted that discovery would not aid Appellants in alleging that they notified a CRA of their dispute. *See id.* at 216 & n.2. Indeed, Sprague certainly knew whether he lodged a complaint with a CRA. Appellants therefore presented no basis for the

---

[7] Because the Amended Complaint failed to allege not only that a CRA notified Salisbury about the contested information in the Report, but also that Appellants notified a CRA of their dispute, we need not address the narrower question of whether an allegation that a plaintiff notified a CRA of disputed credit information is, standing alone, sufficient to survive a 12(b)(6) motion with respect to holding a furnisher of information like Salisbury liable under Section 1681s–2(b).

court to "believe [they] could allege facts that could withstand a 12(b)(6) motion."

*Id.* at 223 (alteration in original).

The district court did not err in dismissing with prejudice here. Although Appellants suggested that their "pleading [could] be amended with ease," *id.* at 174, nothing in Appellants' proposed second amended complaint corrected the deficiency.[8] This is true despite the fact that Salisbury, in its motion to dismiss the

_____

[8] Moreover, outside of a general assertion that Appellants could "allege that they notified a [CRA] and that a [CRA] notified [Salisbury] of the error in question," Appellants' Br. 17–18, Appellants provide no information or argument on whether such notice was in fact provided. Were this the case, it is somewhat suspect that Appellants did not simply add this allegation in their proposed amended complaint. Indeed, some of the cases cited by Appellants in their opposition to Salisbury's motion to dismiss were cases in which the plaintiffs did allege that they notified either a CRA of their dispute or that a CRA had notified the furnisher. *See, e.g.*, J.A. 171–72 (citing *Pleznac v. Equity Residential Mgmt., L.L.C.*, 320 F. Supp. 3d 99, 106 (D.D.C. 2018), *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d 1296, 1301 (D.N.M. 2000)); *see also Pleznac*, 320 F. Supp. 3d at 106 ("To prevail on a claim against a furnisher under § 1681s–2(b), a plaintiff must show both that (1) she notified the reporting agency . . . of the disputed credit information and that (2) the agency in turn provided notice . . . of the dispute to the furnisher . . . . *Equity agrees that Pleznac adequately pled the first of these requirements. She claims to have contacted Transunion* [*i.e.*, the CRA] *in March 2017 to dispute the accuracy of her credit information.*" (emphasis added)); *DiMezza*, 103 F. Supp. 2d at 1301 ("The amended complaint sufficiently alleges that [the furnisher] actually did, or should have, received notice from a consumer reporting agency and cures any defect that may have been in the original complaint."). Moreover, district courts in this circuit have required a plaintiff to allege the furnisher received notice from a CRA to survive a motion to dismiss. *See, e.g.*, *Burns v. Bank of America*, No. 03 Civ. 1685, 2003 WL 22990065 at *2 (S.D.N.Y. Dec. 18, 2003), *vacated on other grounds*, 115 F. App'x 105 (2d Cir. 2004) (summary order) (granting defendants' motion to dismiss a complaint alleging claims under the FCRA because "Plaintiffs d[id] not allege

14

Amended Complaint (to which Appellants' proposed second amended complaint responded), argued that Appellants failed to plead the proper chain of notice triggering any duty by Salisbury under 1681s–2(b)(1). *See id.* at 70–71. "[R]epeated failure to cure deficiencies by amendments previously allowed" is a valid reason to deny leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1962). Accordingly, we affirm the district court's decision to dismiss the Amended Complaint with prejudice.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.

---

that Defendants ever received notice from a consumer reporting agency that imposed a duty to investigate"); *Korzeniowski v. NCO Fin. Sys.*, No. 3:09-cv-1399 (WWE), 2010 WL 466162, at *4, 2010 (D. Conn. Feb. 8, 2010) ("[15 U.S.C. § 1681s-2(b)] takes effect once the consumer reporting agency receives notice as required by 15 U.S.C. § 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided. The notice requirement is to be strictly construed; failure to abide by it means that there cannot be a claim for relief.").